No. 13.—DANIEL S. PRINTUP, plaintiff in error, vs. RILEY G. JOHNSON, defendant in error.

[1.] P accepts a bill of exchange, drawn on him by W & W, under an agreement that certain property of theirs, which he has in his hands, shall be applied to the payment of the acceptance. P pays the acceptance out of his own funds. After the acceptance, J levies an attachment against W & W, on the same property: *Held*, that the property is to be applied to the re-imbursement of P, before it can be applied to the payment of the attachment debt.

In Equity, in Floyd Superior Court.    Decision by Judge TRIPPE, June Term, 1855.

This was a bill filed by Daniel S. Printup, to enforce a factor's lien, upon the following state of facts charged:

In February, 1854, Watters & Walker of Charleston drew a bill of exchange at 30 days on Printup, for $4.000; that Printup had, at that time, and still in his possession, as the property of the drawers, a negro man named Prior; and also several town lots in Rome, and some other claims; that he accepted the bill on condition that said property should be subject to the payment of said draft, this condition being inserted in the written acceptance of the bill; that not being able to realize anything on this property before the bill fell due, he was forced to pay the same out of his own funds; all of which was still unpaid by Watters & Walker, except about $1.200.    Subsequently, Riley G. Johnson sued out an at-

tachment against Watters & Walker, and had the same levied on the said negro and town lots, and was proceeding to obtain judgment against the same; that he would thereby deprive Printup of the benefit on his lien, by agreement, on this property; and Watters & Walker being entirely insolvent, the prayer was for an injunction.

On demurrer, the Court dismissed this bill. This decision is assigned as error.

PRINTUP, for plaintiff in error.

T. W. ALEXANDER, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

The bill of complaint has, in reference to the acceptance, this statement: "which was indorsed" (understood?) "and agreed should be paid out of proceeds of said property, and that said property was held by your orator for that purpose."

The acceptance itself seems, too, to have been made with reference to such an agreement as that indicated by this statement in the bill. The terms of the acceptance are very special; they are as follows: "The within draft, accepted and to be paid only on condition that a negro man named Prior, a carpenter by trade, and a town lot No. 38, Etowah division of Rome, and two lots of land, Nos. 232 and 197, of 4th section of originally Cherokee, now Floyd, and all other claims and property now in my hands, belonging to Watters & Walker, shall be subject to payment thereof. Feb. 11th, 1854. DANL. S. PRINTUP."

It appears from the bill, that the acceptor, Printup, was, at the time of the acceptance, in the possession of the negro and the lands.

From all this and some other matters stated in the bill, it is a fair inference, that the complainant meant it to be understood that the agreement aforesaid, by which the negro and

Printup *vs.* Johnson.

lands were to be applied to the payment of the acceptance, was made at or before the time of the acceptance ; and therefore, made before the levy of the attachment.    At any rate, such is the inference of this Court.

[1.] But if that agreement was made before the levy of the attachment, it gave to Printup 'a lien on the property, which had a priority over the lien on the same property, which the attachment gave to Johnson, the plaintiff in the attachment.    Can there be a doubt of this?    See *Kollock et al. vs. Jackson,* (5 *Ga. R.* 154.)

And perhaps Printup would have had this priority of lien, even if there had been no such express agreement, provided he had the property in possession at the time of the acceptance, and made the acceptance on the understanding (one usually to be implied in such cases between acceptor and drawer,) that the property was to be subjected to the payment of the acceptance.    (*Chitty on Bills,* 347.)

It was, however, objected to the agreement, that it was not in writing ; and therefore, that it was void as to the land, by the Statute of Frauds.

The bill is silent as to whether the agreement was in writing or not.

If the agreement was such a one that it was required to be in writing by the Statute of Frauds, then it is to be presumed, until the contrary be shown, that the agreement was in writing ; for it is, in general, to be presumed, until something to the contrary be shown, that no man does what the law forbids, or what the law declares shall be invalid.

The consequence is, that if the bill be true, the property ought to be first applied to the re-imbursement of Printup, and what remains of it after his re-imbursement, if any remains, to the payment of the attachment debt.

This was the right of Printup.    And this was a right which, it is manifest, he could not make available without the aid of a Court of Equity.

The conclusion therefore is, that the Court below ought not to have over-ruled the demurrer.