### 14481. WRIGHT COMPANY *v.* SAUL *et al.*

1. "A corporation is a de facto corporation where there is a law authorizing such a corporation, and where the company has made an effort to organize under the law, and is transacting business in the corporate name."
2. "A person dealing with a corporation as such is estopped from denying its corporate existence for the purpose of charging the incorporators as partners."
3. A de facto corporation could be a principal and have an agent.
4. The court did not err in sustaining the demurrer and dismissing the petition.

DECIDED NOVEMBER 14, 1923.

9

Complaint; from Muscogee superior court—Judge Munro. March 17, 1923.

The petition alleges in part that "I. Saul, A. E. Weiss and Joe Dannis (said Saul and Weiss being of Muscogee county, Ga., and said Dannis being of Jefferson county, Ala.), as partners doing business in the name of 'The Jardin,' are indebted to petitioner" in a named sum. The non-resident defendant, Dannis, was not served, and the case proceeded against the other two defendants. The petition was divided into two counts. As amended the first count alleges in part, that "on or about the 16th day of May, 1921, the said defendants filed in the superior court of Muscogee county their petition praying for an order of incorporation under the name and style of 'The Jardin,' and which order was granted on June 9th, 1921;" that there was no acceptance of nor any organization under said charter until October 1, 1921; that from August 23, 1921, to August 25, 1921, "the defendants under the name of 'The Jardin' ordered of petitioner, and petitioner thereafter delivered to the defendants," certain goods (the bills for which, attached to the petition, show that the first shipment was made August 30, 1921, and the last on November 23, 1921) ; that "by reason of the facts aforesaid the said defendants, I. Saul, A. E. Weiss and Joe Dannis, doing business under the name of 'The Jardin,' are indebted to petitioner in the sum of $2,961.32 upon said accounts, the said defendants at said time, by reason of the facts aforesaid, being partners, and their liability upon said accounts being a partnership liability." The second count as amended makes practically the same allegations as those of the first count as to the application for the charter and the acceptance and organization under the charter, but alleges that "on August 10th, 1921, petitioner loaned to said defendants, doing business under the name and style of 'The Jardin,' certain china and glassware to be used by defendants in the restaurant conducted by them in Columbus, Georgia, until defendants could obtain certain other china and glassware which had been purchased by them but not delivered;" that "on December 1st, 1921, after defendants had ceased to use said loaned articles," demand was made for the loaned goods, but "defendants totally failed to account for and return a portion of said loaned goods," an itemized statement of which is attached to the petition; that in packing and shipping said loaned

goods plaintiff incurred an expense for which it should be paid, and that when these goods were loaned "they were contracted for by defendants acting for 'The Jardin' as a corporation, plaintiff believing that defendants were authorized agents of an existing corporation, and plaintiff not then knowing that the charter obtained had not been accepted, nor that the corporation had not then been organized under said charter."

The defendants served—Saul and Weiss—each demurred to both counts of the petition, the court sustained the general demurrers and dismissed the petition, and the plaintiff excepted.

*Denny & Wright, Worsley & Flournoy,* for plaintiff.

*McCutchen & Bowden, Hatcher & Hatcher,* for defendants.

BLOODWORTH, J. (After stating the foregoing facts.) The question to be determined is whether the defendants who organized "The Jardin" are liable as partners for the goods for which they were alleged to be indebted. Plaintiff insists that the goods were all ordered in August, and that their rights then became "vested;" that at that time the corporation was "non-existent," that there was no corporation de jure or de facto, and that "if a party contracts as agent when in fact he has no principal, he will be personally liable." We cannot agree with learned counsel for the plaintiff in error that either one of his propositions as applied to .the facts of this case is true. We will first discuss the question whether there was a corporation de facto at the time the contract for the sale of goods became enforcible. In the brief of counsel for plaintiff in error we find the following: "It is sometimes difficult to define, under varying states of facts, what constitutes a corporation de facto, but the decisions are harmonious in requiring that in order to constitute a corporation de facto the following elements are absolutely essential: 1st. A special act or general law under which such a corporation may lawfully exist. 2d. A bona fide attempt to organize under the law. 14 Corpus Juris, pages 213, 217."

The petition shows that the business carried on by the defendants under the name of "The Jardin" was that of running a restaurant. Unquestionably there is a general law of the State under which a corporation for such a purpose could lawfully exist. Was there a bona fide attempt to organize the corporation under this law? The petition itself answers this question. It shows that in the superior court the defendants filed an application for

an order of incorporation under the name and style of "The Jardin;" that this order was granted; that the charter was accepted, and *"organization had under said* charter" on October 1, 1921. (Italics ours.)    Let it be kept in mind that the petition alleges nothing that shows that a partnership in fact existed, or that the defendants ever claimed that they were conducting the business of "The Jardin" as partners, or that they ever held themselves out to the world as partners.    We go a step further than the rule quoted above from the brief of plaintiff in error.    In *Cason* v. *State,* 16 *Ga. App.* 828 (86 S. E. 649), this court said: "A corporation de facto is one exercising corporate powers under color of a more or less legal organization."    In *McRee* v. *Quilman Oil Co.,* 16 *Ga. App.* 12 (3) (84 S. E. 487), it was said: "A 'corporation is a de facto corporation where there is a law authorizing such a corporation and where the company has made an effort to organize under the law and is transacting business in a corporate name.  .  . Where a supposed corporation is doing business as a de facto corporation, the stockholders cannot be held liable as partners, although there have been irregularities, omissions, or mistakes in incorporating or organizing the company.'    1 Cook on Corporations, § 234.    See also 2 Id. § 424."    In *Brown* v. *Atlanta Ry. & Power Co.,* 113 *Ga.* 468 (39 S. E. 73), Justice Cobb said: "In order to constitute a corporation de facto, it is necessary that there should be either a charter or a law under which such a corporation could exist with the powers it assumes to exercise, and a colorable compliance with the requirements of the charter or the law and a user of the rights claimed under the same.    See *Georgia Southern & Florida R. Co.* v. *Trust Co.,* 94 *Ga.* 306, 316 (21 S. E. 705, 32 L. R. A. 208, 47 Am. St. Rep. 153), and cases cited."    See *Brooks* v. *Day,* 129 *Ga.* 694, 696, 697 (59 S. E. 769).

Measured by the rule laid down in the foregoing cases, was there not at least a de facto corporation shown by the allegations of the petition?  We have already stated that there is a law authorizing such a corporation.  The petition shows that the company was organized and conducting business in the corporate name, that of "The Jardin," thus showing a user of the rights claimed under the order of incorporation.    So it seems to us, from the allegations of the petition, that no other conclusion can be reached than that even at the time the goods were ordered there was a genuine and bona

fide effort to establish a de jure corporation, and that at that time there was at least a de facto corporation. If the defendants were not acting at least under color of authority, it would be difficult to conceive how there could be a de facto corporation. In *Georgia Southern R. Co.* v. *Trust Co.*, supra, Justice Lumpkin quotes with approval from Heaston *v.* Cin. & Ft. W. R. Co., 16 Ind. 276 (79 Am. Dec. 430), the following: "A de facto corporation, that by regularity of proceeding might be one de jure, can sue and be sued; and a party who contracts with such corporation, while it is acting under its de facto organization, is estopped, in a suit on such contract, from denying such organization at the date of the contract." In *Edenfield* v. *Bank of Millen*, 7 *Ga. App.* 645 (67 S. E. 896), this court held: "A party will not be heard to deny that the opposite party to a suit is a corporation, where he has dealt with such party as a corporation." See *Dorris* v. *Farmers & Merchants Bank*, 22 *Ga. App.* 514 (2) (96 S. E. 450). In Lockwood *v.* Wynkoop, 178 Mich. 391 (144 N. W. 847), Justice Stone said: "It is a familiar doctrine that a person dealing with a corporation as such is estopped from denying its corporate existence for the purpose of charging the incorporators as partners."

Did the plaintiff deal with the corporation as such while it was "acting under its de facto organization?" The petition shows that none of the goods were ordered until after the date of the incorporation; that they were ordered by and shipped to the defendants in the name of "The Jardin," the defendants contracting for and receiving said goods in the name of "The Jardin" as a corporation. The petition shows no acceptance of these orders further than that implied by the fact that the goods were shipped to and received by "The Jardin," as shown by the account of sales attached to the petition, which account shows that some of the goods were shipped after October 1, 1921, the date of the organization, as shown by the petition. So it appears that when some of the goods were delivered there was a de jure corporation, and when the others were delivered there was at least a de facto corporation. From the foregoing we must reach the conclusion that the plaintiff dealt with "The Jardin" as a corporation and shipped its goods to the corporation, and that the defendants are not liable as partners or as individuals. As was said in *Planters & Miners Bank* v. *Padgett*, 69 *Ga.* 164, "The members never agreed to enter into the contract, either

severally or jointly, and it is difficult to see how they can be bound by it. They never agreed to be bound as partners, nor did they hold themselves out to the world as such." What is heretofore said shows that there is nothing in the insistence of counsel for plaintiff in error either that "the corporation in August was nonexistent, there was no corporation either de jure or de facto," or that "plaintiff relied on defendants being authorized agents of an existing corporation."

In addition to what has been said, it was held in *Bartram* v. *Collins Mfg. Co.*, 69 *Ga.* 751, that "a corporation is not a person in law until after the grant of its charter." In *Smith* v. *Satilla Pecan Orchard &c. Co.*, 152 *Ga.* 544 (110 S. E. 306), Justice Hill said: "The evidence is sufficient to authorize the conclusion that the charter was accepted, and that organization was effected under it. Where application is made for a charter in this State, and it is granted after having been applied for, acceptance of the charter may be presumed from such previous application. *City of Atlanta* v. *Gate City Gas Light Co.*, 71 *Ga.* 106." The law [Civil Code of 1910, § 2823 (3)] provides that "no corporation created under this section shall commence to exercise the privileges conferred by the charter until ten per cent. of the capital stock is paid in." From the fact that the petition alleges that defendants were "doing business," and did not negative the idea that this provision of the law had not been complied with, it is a legitimate inference that at least ten per cent. of the capital stock of the corporation had been paid in when the business of "The Jardin" was commenced.

As the petition shows that the plaintiff dealt with "The Jardin" as a corporation, shipped the goods to the corporation, loaned to the corporation certain goods, and all its dealings were with the corporation, the court did not err in sustaining the demurrer and dismissing the petition.

*Judgment affirmed. Broyles, C. J., and Luke, J., concur.*