## 58784. GEORGIA INSURANCE AGENCIES, INC. v. SENTRY INDEMNITY COMPANY.

McMURRAY, Presiding Judge.

In 1974 Georgia Insurance Agencies, Inc. entered into an agency agreement with Sentry Indemnity Company whereby it was granted authority to act as agent to solicit and submit applications for the sale of Sentry's casualty and liability insurance (as well as other types of insurance) on a commercial basis. While operating under the contract, the agent bound coverage by Sentry in soliciting and selling a policy or policies to East Side Lumber Company. The policy thus solicited, obtained, and written was effective from August 27, 1976, to August 27, 1977. The agent collected and remitted to Sentry the basic premium due. However, during the period that the policy was in effect, Sentry terminated the principal-agent relationship between it and its agent, effective April 6, 1977. In December, 1977, approximately eight months after the termination of the principal-agent relationship, and some three and one-half months after the expiration of the policy of insurance covering East Side, Sentry performed an audit upon the operations of East Side in which it found that an additional premium of $2,025 was due for the coverage provided during the policy period shown above. Of the $2,025 it determined that $405 was

the portion which would have been commission. It therefore asserted that it was due from the agent the sum of $1,620. It promptly demanded payment from the agent, but the agent declined payment and returned the billing to Sentry for direct communication with the insured.

Whereupon Sentry Indemnity Company brought this action seeking judgment in the principal sum of $1,620 plus interest from its former agent, Georgia Insurance Agencies, Inc.

The defendant answered, in general, denying the claim, admitting however jurisdiction and that the above facts are true as stated in the pleadings but denied that it was in any way liable for the claimed indebtedness by reason of the cancellation of the principal-agent relationship, no duty of the defendant to collect any further premiums due, and for the reason that the policy involved was no longer in force or effect. It contends it had no obligation whatsoever to the plaintiff after cancellation of the contract, and the plaintiff had failed to join East Side Lumber Company as a necessary and proper party.

After discovery, plaintiff moved for summary judgment contending that the claim is for an insurance premium due from its insured, East Side Lumber Company, for an insurance policy solicited and sold to the said East Side Lumber Company by the defendant pursuant to an agency agreement between the plaintiff and defendant; the agreement imposed an obligation on the defendant to collect premiums generated by audits at the expiration of policies; and that such a final audit is an integral part of the insurance policy so as to impose a duty upon defendant to collect said premiums or be liable for them, even in a situation where the agency agreement itself had been cancelled prior to the time the audit itself was conducted. It contends that the cancellation of the agency agreement merely revoked the defendant's authority to submit new policy applications, or bind plaintiff for policy issuance subsequent to the termination but did not relieve defendant from liability on policies previously issued and not expired. The defendant moved for summary judgment contending it had no duty to collect and pay the said premium to the plaintiff after

their relationship was terminated, there was no agency relationship between the parties at the time the additional premium was claimed, and it had no obligation whatsoever to the plaintiff and no authority to act for the plaintiff. Whereupon, on June 13, 1979, the court granted summary judgment in favor of the plaintiff and awarded plaintiff the sum of $1,620 principal and $163.73 interest plus costs. Defendant appeals. *Held:*

1. The agency agreement stated clearly that Sentry had granted authority to the agent "to collect, receive and receipt for premiums on insurance tendered by the Agent to and accepted by the Company, and . . . to receive commissions at rates from time to time agreed upon between the Company and the Agent." Paragraph 4 thereof stated that even after the termination of the agency agreement if premiums were refunded under any policy "by reason of cancellation or otherwise, the Agent shall immediately refund to the Company the commission originally retained by him on the amount of premium so refunded." The contract provided for two types of accounting, i.e., "Company Bill Insured Sales" and "Agent Billed by Company Sales," the latter to be paid 45 days "after account month." The contract prescribes the accounting methods as follows: "Agent Billed by Company Basis. Accounts will be prepared monthly by the Company, in accordance with the Company's records, so as to reach the Agent on or about 15 days after the end of the month for which the account was rendered. The 'Net Balance' shown to be due the Company per such account shall be PAID [without] CHANGE not later than [illegible — otherwise shown to be 45] number of days specified above after the end of the month for which the account was rendered. ANY ADJUSTMENT NECESSARY will be made in the bill for the following month." Further, as to the other method: "Company Bill Insured Basis. The Company assumes responsibility for collection of premiums due. Commissions shall be payable within a reasonable time after the policies are placed in effect by the Company." We find nothing in the above language which would make the agent liable for the policy premium in question here although both parties, having a monetary interest in the premium, they would have a chose in action

to collect same.

2. There is an equitable maxim which applies equally to the law that when one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury shall bear the loss. Code § 37-113. One or both of the litigants here may have been somewhat negligent or derelict in the collection of the additional premium due on the policy in question. It may be, however, that in the insurance business late premium audits are common practice. As to the time of such audits it only appears from the contract as shown in Division 1 that the company was to bill the agent "on or about 15 days after the end of the month for which the account was rendered." and further, that the company (Sentry) "assumes responsibility for collection of premiums due." We find nothing in the above contract which demands a judgment in favor of Sentry by reason of the facts involved in the failure to collect the balance of the premium found to be due by reason of the late audit. It would appear that both litigants would be vitally interested in collecting the balance of the premium due from the third person (the insured) who apparently has not been billed and has not refused payment of the balance of the premium sought to be collected here.

As the contract by and between the parties does not make the agent liable in this instance so as to demand a judgment for the amount of the balance of the premium due after a late audit, issues of material fact remain as to which of these two innocent parties has made it possible for the insured not to pay its just debt, if it be owed in this instance. Nor do we have any knowledge of any final accounting between the parties. Accordingly, issues of material fact remain. The trial court erred in rendering summary judgment for the plaintiff and holding "that there are no genuine issues as to any material facts, and that the plaintiff is entitled to a judgment as a matter of law, . . ." thereafter rendering a money judgment for the plaintiff. See *Holland v. Sanfax Corp.,* 106 Ga. App. 1 (1), 4-5 (126 SE2d 442); *Perkins v. P. L. W., Inc.,* 126 Ga. App. 603 (191 SE2d 482); *Taylor v. B. & W. Electric Supply Co.,* 134 Ga. App. 634 (215 SE2d 530); *Hurston v. Dealer Service Plan,* 141 Ga. App. 148 (2) (232 SE2d 641).

*Judgment reversed. Banke and Underwood, JJ., concur.*

ARGUED OCTOBER 30, 1979 — DECIDED DECEMBER 5, 1979.

*Stewart R. Brown,* for appellant.
*Ronald C. Thomason,* for appellee.